## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JESS LILES, JAY FUNDERBURK,
KEVIN BENNETT, GERRY WALTON,
KERRY WILLIAMS, ROY SALVA,
GREG ALLMAN, MIKE HINOJOS,
GENE BOLTON, TODD LORD,
DEBBIE SEIFTS, and SAUL RASCON,

      Plaintiffs,

vs.                             No. CV 06-854  JB/CEG

WASHINGTON TRU SOLUTIONS, LLC.,
WESTINGHOUSE GOVERNMENT ENVIRONMENTAL
SERVICES CO., LLC and UNITED STEEL,
PAPER AND FORESTRY, RUBBER, MANUFACTURING,
ENERGY, ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION, AFL-CIO;
ITS LOCAL 12-9477; PAPER, ALLIED INDUSTRIAL
CHEMICAL & ENERGY WORKERS INTERNATIONAL
UNION AFL-CIO; AND ITS LOCAL 4-9477.

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Joint Motion for Summary

Judgment, filed April 30, 2007 (Doc. 31)("Motion").  The Court held a hearing on this motion on

July 5, 2007.  The primary issues are: (i) whether each Plaintiff has exhausted the available

grievance process before filing suit; and (ii) whether the Plaintiffs that have exhausted the grievance

process have timely filed this federal action.  Because the Court finds that there is no genuine issue

of material fact regarding the Plaintiffs' failure to satisfy the applicable statute of limitations and/or

exhaustion requirements, and that the Defendants are thus entitled to judgment as a matter of law,

the Court will grant summary judgment in favor of the Defendants and against the Plaintiffs.

## FACTUAL BACKGROUND

The Plaintiffs, Greg Allman, Kevin Bennett, Gene Bolton, Jay Funderburk, Mike Hinojos, Jess Liles, Todd Lord, Saul Rascon, Roy Savala, Debbie Seifts, Gerry Walton, and Kerry Williams, live in Lea County, New Mexico and are employees of Defendant Washington TRU Solutions, LLC ("WTS").  See id. at 1-2; Plaintiff's Response to Defendants' Joint Motion for Summary Judgment at 1, filed June 12, 2007 (Doc. 43)("Response").  The Plaintiffs work for WTS at the United States Department of Energy's Waste Isolation Pilot Plant ("WIPP"), see Motion at 1, Response at 1, which is located approximately twenty-six miles southeast of Carlsbad, New Mexico, see Motion at 1.

WTS is WIPP's managing and operating contractor.  See id. at 2; Response at 2.  Defendant Westinghouse Government Environmental Services Co., LLC ("WGES") is a business unit of Washington Group International, see Motion at 2, Response at 3, the majority owner of WTS, see Motion at 2, Response at 3, and WTS' predecessor at WIPP, see Response at 1.  The local for Defendant United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO ("USW"), Defendant Local 12-9477, is currently the authorized bargaining agent for represented employees at WIPP.  See Motion at 3; Response at 3.

Local 12-9477 and WTS are currently parties to a Collective Bargaining Agreement that became effective on October 1, 2005 ("2005 CBA").  See Motion at 3; Response at 3.  The local for Defendant Paper, Allied Industrial Chemical and Energy Workers International Union AFL-CIO ("PACE"), Defendant Local 4-9477, was the authorized bargaining unit for certain employees at WIPP from 1999 to 2005.  See Motion at 3; Response at 3.  Local 4-9477 and WGES were parties to a Collective Bargaining Agreement that became effective on June 1, 1999 ("1999 CBA").  See

Motion at 3; Response at 3.

Section XXII(B) of the 1999 CBA is titled "Transportation" and states: "The Company will continue to provide transportation to and from the [WIPP] facility as long as the Department of Energy approves the continuation of such transportation."  Motion at 3; Response at 3.  Section XXII(B) of the 2005 CBA is identical to section XXII(B) of the 1999 CBA.  See Motion at 3; id., Exhibit 2, Agreement Between WTS and USW and Local 12-9477 (effective October 1, 2005); Response at 3.

The issue of transportation for Lea County employees was discussed during negotiations concerning the 2005 CBA.  See Motion at 3; Response at 3.  The level of transportation for Lea County employees was not changed, however, because it relies on the funding the United States Department of Energy ("DOE") provides.  See Motion at 3; Response at 3.  WTS agreed to determine whether receiving additional funding from the DOE was a possibility.  See Motion at 3; Response at 3.  Terry Frye, WTS' Human Resources Manager, requested additional funding for transportation from the DOE.  See Motion at 4; Response at 3.  The DOE did not approve or provide any additional funding.  See Motion at 4; Response at 3.

With the exception of portions of December 2005 and January 2006, the level of transportation WTS has provided between Lea County and WIPP has remained constant since the 2005 CBA was negotiated and became effective.  See Motion at 4; Response at 3.  During portions of December 2005 and January 2006, a bus was provided to transport employees from Lea County to WIPP for an additional night shift, because activity had temporarily increased at WIPP.  See Motion at 4; Response at 3.[1]

---

[1] At the July 5, 2007 hearing, the Plaintiffs' counsel represented that the van that transports employees from Hobbs, New Mexico to WIPP is for non-Union, supervisor employees, and that,

Regarding transportation, the WTS Employee Handbook states:

> As a convenience for employees, our company will offer transportation as long as it meets our business needs and remains cost-effective, and when practicable, for day shift employees, for employees on other shifts or those traveling from Hobbs.

> See your manager for the latest information about employer-provided transportation and how you can participate.  Remember that it is ultimately the employee's responsibility to find a means to get to work on time, and Washington cannot offer any transportation guarantees.

Motion at 4; id., Exhibit 3, WTS Employee Handbook at 39; Response at 3.

In early 2000, Bolton filed a written grievance concerning transportation with Local 4-9477. See Motion at 4; id. Exhibit 4, Oil, Chemical and Atomic Workers International Union Complaint or Grievance Report (dated February 11, 2000)("Bolton Grievance"); Response at 3.  Local 4-9477 submitted the grievance to WGES on January 31, 2001.  See Motion at 4; id. Exhibit 5, Letter from Roger Simmons to Dave Reber (dated January 31, 2001); Response at 3.  The company responded to Bolton's grievance on February 8, 2001, stating that, "[s]ince the company has continued to provide transportation at the approved DOE funding level, no violation of the contract [has] occurred."  Motion at 4; id., Exhibit 6, Letter from S.P. Youngerman to R.D. Simmons (dated February 8, 2001); Response at 3.  Local 4-9477 withdrew Bolton's grievance on July 26, 2001.  See Motion at 5; id., Exhibit 7, Letter from W.F. Beeman to Mike Knowles (dated July 26, 2001).

Bennett, Funderburk, and Liles submitted internal complaint forms ("WIPP Forms") to WTS in July 2004.  See Motion at 5; id., Exhibit 8, WIPP Form of Kevin Bennett (dated July 21,

---

if employees working the same shift as the Plaintiffs attempted to take that van they would arrive at WIPP for work late.  See Transcript of Hearing at 44:24-45:14 (Klipstine)(taken July 5, 2007)("July 5 Transcript")(The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.).  The Court notes that the record does not appear to otherwise support the representation of the Plaintiffs' counsel.

2004)("Bennett's WIPP Form"); Response at 4.  The WIPP Form that Bennett submitted concerned transportation and referenced Funderburk, Liles, Lord, and Williams.  See Bennett's WIPP Form.

## PROCEDURAL BACKGROUND

### 1.    The Pleadings.

The procedural history of this case has been difficult, in part because of the number of Plaintiffs involved and in part because of personal problems that their counsel unfortunately encountered earlier this summer.  Perhaps, as a result of these hurdles, the Plaintiffs present almost no evidence in opposition to the Defendants' motion.  Accordingly, most of the record is the product of the Defendants' discovery and submissions, and there are no genuine issues of material fact about that record.

WTS, WGES, USW, PACE, Local 12-9477, and Local 4-9477 (collectively, the "Defendants"), citing federal subject-matter jurisdiction pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, removed this case from the Fifth Judicial District Court of the State of New Mexico to federal district court on September 12, 2006.  See Joint Notice of Removal at 1-3, filed September 12, 2006 (Doc. 1)("Removal Notice").  In their Complaint, the Plaintiffs allege that WGES and WTS breached the 1999 CBA and the 2005 CBA by not providing transportation to them as called for in section XXII(B) of those contracts.  See Removal Notice, Exhibit A, Complaint for Breach of Contract and for Breach of Duty to Fairly Represent at 4 ("Complaint").  The Plaintiffs also claim in their Complaint that PACE and USW, through Local 4-9477 and Local 12-9477, breached their duties to fairly represent the Plaintiffs by refusing, wrongfully and without justification, to prosecute the Plaintiffs' grievances.  See id. at 5-6.

PACE, USW, Local 4-9477, and Local 12-9477 (collectively, the "Union Defendants") filed their Answer to the Plaintiffs' Complaint on September 12, 2006.  See Answer of Defendants,

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO; its Local 12-9477; Paper, Allied Industrial Chemical and Energy Workers International Union, AFL-CIO; and its Local 4-9477, filed September 12, 2006 (Doc. 2)("Union Answer").  In their Answer, the Union Defendants deny the Plaintiffs' contentions that the Plaintiffs, both individually and collectively, filed grievances against WTS and WGES concerning transportation, and that the Union Defendants, wrongfully and without justification, refused to prosecute those grievances.  See id. at 4.  WTS and WGES (collectively, the "Company Defendants") filed their Answer to the Plaintiffs' Complaint on September 15, 2006.  See Defendant Washington Tru Solutions, LLC's and Defendant Westinghouse Government Environmental Services Co., LLC's Answer to Plaintiffs' Complaint for Breach of Contract and for Breach of Duty to Fairly Represent, filed September 15, 2006 (Doc. 3)("Company Answer").  The Company Defendants deny the Plaintiffs' characterization of section XXII(B) of the 1999 CBA and the 2005 CBA, and deny the Plaintiffs' contention that they deliberately and intentionally breached the 1999 CBA and the 2005 CBA.

### 2.    Discovery.

During his April 5, 2007 deposition, Allman testified that he never asked the Union to file a grievance concerning transportation on his behalf.  See Motion, Exhibit 17, Deposition of Greg Allman at 34:24-35:2 (taken April 5, 2007)("Allman Depo.").  Allman also testified that he was not aware of anybody asking the Union to file a grievance on his behalf regarding transportation.  See id. at 35:3-8.

Bolton, at his April 6, 2007 deposition, testified that he did not file another grievance regarding transportation after submitting one in 2000 and that, beginning in 2001, he believed that the Union was not fairly representing him.  See Motion, Exhibit 16, Deposition of Wallace Eugene

Bolton at 48:6-17 (taken April 6, 2007)("Bolton Depo."). Bolton also testified that, "somewhere in the 2003[-]2004 time frame," he was convinced that the Union was not going to do anything with regard to transportation. Id. at 49:5-9.

Bennett, during his April 5, 2007 deposition, testified that, in 2004, Funderburk told him about a conversation he had with Union representatives Marcus Ingram and Steven Castro in which they stated that a grievance concerning transportation was not going to be filed. See Motion, Exhibit 11, Deposition of Kevin Bennett at 11:13-21 (taken April 5, 2007)("Bennett Depo."). Bennett testified that, pursuant to his conversation with Funderburk, he knew in 2004 that the Union was not going to file a grievance regarding transportation. See id. at 11:22-25. Bennett also testified that, in 2005, he requested that the Union file a grievance regarding transportation two or three times, that he was told that the Union was not going to file a grievance concerning transportation, and that he relayed that information to Funderburk, Liles, Lord, Seifts, Walton, and Williams. See id. at 9:11-11:12.

During his April 5, 2007 deposition, Funderburk testified that he requested that the Union file a grievance regarding transportation in 2004, that the Union refused his request, and that he told Bennett, Liles, Lord, and Williams about the Union's refusal in 2004. See Motion, Exhibit 18, Deposition of Jay Funderburk at 17:14-18:15 (taken April 5, 2007)("Funderburk Depo."). Funderburk testified that, since that time, he has not asked the Union to file a grievance concerning transportation or filed one individually, see id. at 12:9-15, Response, Exhibit 7, Funderburk Depo. at 20:21-25, and that he did not know of anyone ever asking the Union to file a grievance on his behalf, see Response, Exhibit 7, Funderburk Depo. at 20:15-20. Funderburk also testified that, in July 2004, he and at least three other employees filed a WIPP Form relating to transportation. See id. at 30:3-12.

-7-

Liles, at his April 5, 2007 deposition, testified that he did not recall whether he filed a grievance with respect to transportation.  See Motion, Exhibit 12, Deposition of Jess E. Liles, Jr. at 34:1-3 (taken April 5, 2007)("Liles Depo.").  Liles also testified that he had never seen a grievance form like the one Bolton filed in 2000.  See id. at 36:22-37:4.

Lord testified, during his April 5, 2007 deposition, that he never complained to the Union about transportation and that he never filed a grievance.  See Motion, Exhibit 13, Deposition of Todd Lord at 25:19-23; 28:21-25 (taken April 5, 2007)("Lord Depo.").  Lord testified that he asked Bennett, Funderburk, Liles, and Williams to "include [him] in on [a grievance]" concerning transportation.  Id. at 38:2-7.  Lord also testified that, with regard to transportation, fellow employees had told him that the Union "didn't want to rock the boat."  Id. at 28:8-15.

During his April 6, 2007 deposition, Rascon testified that he never filed a grievance relating to transportation and that he never asked anybody to file a grievance on his behalf.  See Motion, Exhibit 19, Deposition of Saul Rascon at 15:17-16:2 (taken April 6, 2007)("Rascon Depo.").  Similarly, at his April 5, 2007 deposition, Savala testified that he never filed a grievance concerning transportation and that he never requested the Union to file one on his behalf.  See Motion, Exhibit 20, Deposition of Rogelio Savala at 15:22-16:2 (taken April 5, 2007)("Savala Depo.").  Not unlike Rascon and Savala, Seifts, during her April 6, 2007 deposition, testified that she never filed a grievance regarding transportation and that she never asked the Union to file one.  See Motion, Exhibit 14, Deposition of Debbie Seifts at 20:10-14 (taken April 6, 2007)("Seifts Depo.").  Seifts also testified that she never submitted a WIPP Form concerning transportation.  See Response, Exhibit 5, Seifts Depo. at 22:23-25.

Walton, at her April 6, 2007 deposition, testified that she never asked the Union to file a grievance relating to transportation.  See Motion, Exhibit 21, Deposition of Geraldine Walton at

33:24-34:2 (taken April 6, 2007)("Walton Depo."). Walton also testified that she believed someone

had, on her behalf, asked the Union to represent her. See id. at 34:16-18. Williams, during his April

5, 2007 deposition, testified that, sometime before October 1, 2005, he understood that the Union

was not going to pursue a grievance on the transportation issue. See Motion, Exhibit 15, Deposition

of Kerry D. Williams at 28:13-29:1 (taken April 5, 2007)("Williams Depo.").

On April 13, 2007, the Company Defendants filed a motion for discovery sanctions against

the Plaintiffs. See Defendants Washington TRU Solutions, LLC and Westinghouse Government

Environmental Services Co., LLC's Rule 37 Motion for Discovery Sanctions, filed April 13, 2007

(Doc. 29)("Rule 37 Motion").  In their motion, the Company Defendants requested that the Court

impose sanctions under rule 37, because the Plaintiffs failed to comply with the Court's March 27,

2007 Order, which required the Plaintiffs to produce complete and full written and categorized

responses to discovery requests, see id. at 4-5, and because Hinojos willfully failed to appear for his

deposition, see id. at 6-7.  The Court, with its June 18, 2007 Memorandum Opinion and Order,

granted the Company Defendants' motion for discovery sanctions in part and denied it in part.  See

Memorandum Opinion and Order at 10, filed June 18, 2007 (Doc. 51).  The Court sanctioned the

Plaintiffs by precluding  them from using in hearings, filings, or at trial any document that they had

not produced to the Defendants, or that the Defendants did not already possess, before June 18,

2007. See id.

### 3.    The Summary Judgment Motion.

The Defendants filed their joint summary judgment motion on April 30, 2007, seeking

summary judgment on the Plaintiffs' breach of contract and breach of the duty to fairly represent

claims. See Doc. 31. On May 23, 2007, the Defendants filed a notice of completion of briefing,

informing the Court that the Plaintiffs had not filed a response to the joint summary judgment

motion and that the time for doing so had passed.  See Notice of Completion of Briefing Regarding Defendants' Joint Motion for Summary Judgment [Doc. 31], filed May 23, 2007 (Doc. 35).  The Plaintiffs filed a motion for an extension of time to respond to the Defendants joint summary judgment motion on May 31, 2007.  See Motion for Extension of Time to File Response to Motion, filed May 31, 2007 (Doc. 39).  The Defendants initially opposed the Plaintiffs' request for an extension of time in which to respond, see Defendants' Response to Motion for Extension of Time to File Response to Motion [Doc. 39], filed June 4, 2007 (Doc. 40), but later consented to it on the conditions that the Plaintiffs be held to their late-filed June 12, 2007 response and that the Defendants be allowed to submit a reply, see Transcript at 11:7-24 (Gilkey)(taken June 14, 2007).

In their June 13, 2007 response to the joint summary judgment motion, the Plaintiffs agree with most of the Defendants' statement of undisputed facts.  See Plaintiff's Response to Defendants' Joint Motion for Summary Judgment at 2-4, filed June 12, 2007 (Doc. 43)("Response").  Among the aspects of the Defendants' statement with which the Plaintiffs take issue is the assertion that Bolton is the only Plaintiff that filed a grievance concerning transportation with the Union.  See id. at 3-4.  The Plaintiffs contend that a material issue of fact exists regarding the steps various Plaintiffs took to request that the Union Defendants process a grievance, and that an issue of fact exists concerning what they were told about the steps that the Union Defendants' planned to take with respect to the transportation issue.  See id. at 3-4.  On June 21, 2007, the Defendants filed their reply to the Plaintiff's response to the joint summary judgment motion.  See Defendants' Reply in Support of Their Joint Motion for Summary Judgment [Doc. 31], filed June 21, 2007 (Doc. 54).

### 4.      Hearing.

At the July 5, 2007 hearing, the Defendants asserted that they believed that their statute of limitations argument was their strongest.  See July 5 Transcript at 5:6-8 (Youtz).  The Defendants

-10-

maintained that, while the Union did tell some employees that it was going to continue to look into the transportation issue, it stated that it was not going to submit a formal grievance. See id. at 6:8-18. The Defendants noted that several of the Plaintiffs admitted at their depositions that they understood that the Union would not be filing a grievance with respect to transportation. See id. at 7:6-9. The Defendants represented that a WIPP-Form complaint is distinguishable from a grievance, because a grievance is filed pursuant to a formal process set forth in the collective-bargaining agreements, while a WIPP-Form complaint is of a comparatively informal nature. See id. at 35:9-24. The Defendants also stated that there is not definitive testimony that four of the Plaintiffs knew that the Union was not going to file a grievance concerning transportation. See id. at 15:9-15.

At the July 5, 2007, the Plaintiffs argued that the statute of limitations should not bar their claims because, while the Union stated that it was not going to file a grievance regarding transportation, it also stated that it was going to continue to address the transportation issue. See id. at 20:12-15 (Klipstine). The Plaintiffs contended such Union pronouncements are material to whether a genuine issue of fact exists with regard to whether the statute of limitations bars their claims. See id. at 22:16-17; 23:1-9. The Plaintiffs maintained that the Union's statements that it was going to continue to address the transportation issue should have tolled the statute of limitations. See id. at 23:23-24:4. The Plaintiffs also asserted that those among them that did not attempt to exhaust the grievance process should be excused from doing so, because they knew that previous requests to the Union that grievances be filed concerning transportation were rejected. See id. at 26:21-25; 27:13-20; 30:5-31:7.

## LAW REGARDING SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. Id. at 249-50 (citations omitted). Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988). The court may consider only admissible evidence when ruling on a motion for summary judgment. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

"The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(citations and internal quotations omitted). The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder could reasonably find for the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

-12-

Id. at 322-23.  "In a response to a motion for summary judgment, a party cannot rest on ignorance

of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope

that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The

non-moving party "must do more than simply show that there is some metaphysical doubt as to the

material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).

See Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir.1996).  A court must,

however, look at the record in the light most favorable to the party opposing summary judgment.

See Smith v. Denver Pub. Sch. Bd., No. 91-1285, 1994 WL 651978, at *3 (10th Cir. November 18,

1994).

## LAW REGARDING HYBRID ACTIONS UNDER
## § 301 OF THE LABOR MANAGEMENT RELATIONS ACT

While the Plaintiffs are understandably eager to have the Court reach the merits of their

hybrid claims, the interpretation of the collective-bargaining agreements, and the transportation

issues, there are important preconditions to a hybrid § 301 action.  A plaintiff must first afford the

union the opportunity to act on his or her behalf.  If a plaintiff is unsuccessful in securing the union's

action, the plaintiff then must timely file in federal court his or her hybrid action.

### 1.    Generally.

Hybrid actions may be brought under § 301 of the Labor Management Relations Act.  See

Cosidine v. Newspaper Agency Corp., 43 F.3d 1349, 1357 (10th Cir. 1994)(citing DelCostello v.

International Bhd. of Teamsters, 462 U.S. 151, 163-65 (1983)).  Section 301 hybrid actions involve

two claims: "[i] that the employer breached the collective-bargaining agreement; and [ii] that the

union breached its duty of fair representation."  Cosidine v. Newspaper Agency Corp., 43 F.3d at

1357 (internal quotations omitted).  Because those two claims are "inextricably interdependent," a

plaintiff must prove both to succeed in a hybrid action.  Id. (quoting DelCostello v. International

Bhd. of Teamsters, 462 U.S. at 164-65)(internal quotations omitted).  See Nelson v. Holmes Freight

Lines, Inc., 37 F.3d 591, 594 (10th Cir. 1994)(noting same).  Moreover, to prevail in a hybrid action

on a theory that the employer violated the collective-bargaining agreement, a plaintiff must first

establish a breach of the duty of fair representation.  See Mangrum v. U.S. W. Commc'ns, Inc., 961

F. Supp. 1510, 1513-14 (D. Utah 1996) aff'd, Mangrum v. U.S. W. Commc'ns Servs., 131 F.3d 152

(10th Cir. 1997)("[A]n employee must first establish a breach of the duty of fair representation by

the union before evidence is heard against the employer.")(citing Ayala v. Union de Tronquistas de

P. R., Local 901, 74 F.3d 344, 346 (1st Cir. 1996); Keppard v. International Harvester Co., 581 F.2d

764, 766 (9th Cir. 1978)).

     A union breaches the duty of fair representation when its conduct towards an employee is

"arbitrary, discriminatory, or in bad faith."  Nelson v. Holmes Freight Lines, Inc., 37 F.3d at 594

(quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967))(internal quotations omitted).

> A union's actions are arbitrary only if, in light of the factual and legal landscape at
> the time of the union's actions, the union's behavior is so far outside a wide range
> of reasonableness as to be irrational. . . .  A union's discriminatory conduct violates
> its duty of fair representation if it is invidious.

Nelson v. Holmes Freight Lines, Inc., 37 F.3d at 594 (citations and internal quotations omitted).

Union acts that are merely negligent do not state a claim for breach of a duty of fair representation.

See id.  Establishing that a union breached its duty to fairly represent "involves more than

demonstrating mere errors in judgment."  Hines v. Achor Motor Freight, Inc., 424 U.S. 554, 570-71

(1976).

     The United States Court of Appeals for the Tenth Circuit has stated that a union's good faith,

non-discriminatory judgments should be treated with deference.  In Young v. United Auto. Workers-

Labor Employment & Training Corp., 95 F.3d 992 (10th Cir. 1996), the Tenth Circuit stated:

> The Ninth Circuit has held that it will not attempt to second-guess a union's good faith, nondiscriminatory judgment in evaluating the merits of a grievance or in presenting the grievance at an arbitration hearing.  The [National Labor Relations Board ("NLRB")] also refuses to second-guess a union's assessment of the merits of a grievance so long as it exercises its discretion in good faith and with honesty of purpose.  Mere negligence, poor judgment, or ineptitude in grievance handling are insufficient to establish a breach of the duty of fair representation.  We endorse the view taken by the Ninth Circuit and the NLRB, and we will not substitute for our own the Union's good faith, nondiscriminatory judgment in assessing and presenting its members' grievances.  Of course, to enjoy this deference the Union must show that it did indeed exercise its judgment and did not act arbitrarily.

Id. at 997-98 (internal citations and quotations omitted).

### 2.     Exhaustion.

Ordinarily, an employee must exhaust his or her contractual remedies before bringing suit

under § 301 in federal court.

> As a general rule . . . federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress.  Unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf.

Garvin v. American Tel. & Tel. Co., 174 F.3d 1087, 1094 (10th Cir. 1999)(quoting Republic Steel

Corp. v. Maddox, 379 U.S. 650, 652 (1965))(internal quotations omitted).

> The Supreme Court [of the United States] instructs that, where a collective bargaining agreement establishes a grievance procedure, an employee must at least attempt to exhaust such a process.  An employer cannot be held liable for breach of a collective bargaining agreement unless it can be shown that the employee unsuccessfully sought relief through the union grievance procedure.

Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)(Van Antwerpen, J.)(citing

Vaca v. Sipes, 386 U.S. at 185).  See Garrish v. International Union, United Auto., Aerospace, and

Agric. Implement Workers of Am., 417 F.3d 590, 594 (6th Cir. 2005)("Before bringing a hybrid

§ 301 claim, an employee first must exhaust any grievance . . . remedies provided in the collective-

bargaining agreement.")(internal quotations omitted).  Further, employees have a duty to know what the grievance procedures at their disposal are."  Perry v. Midstates Indep. Union, 20 Fed. Appx. 527, 531 (7th Cir. 2001)(citing Hammer v. International Union, United Auto., Aerospace, and Agric. Implement Workers of Am., 178 F.3d 856, 858-58 (7th Cir. 1999)).

        The Supreme Court has advanced three exceptions to the requirement that grievance remedies under a collective-bargaining agreement be totally exhausted before suit is brought: "[i] where the employer's conduct repudiates contractual remedies; [ii] where use of grievance procedures would be futile; and [iii] where the union breaches its duty by wrongfully refusing to process a grievance."  Podobnik v. United States Postal Serv., 409 F.3d at 594 (citing Clayton v. International Union, U.A.W., 451 U.S. 679, 689 (1981) and Vaca v. Sipes, 386 U.S. at 185).  "While failure to exhaust . . . may be excused where attempts to exhaust would be futile, a plaintiff cannot invoke this excuse in a conclusory fashion, but must present facts supporting the claim of futility." Dorn v. General Motors Corp., 131 Fed. Appx. 462, 469 (6th Cir. 2005)(affirming the district court's granting of summary judgment).  See Podobnik v. United States Postal Serv., 409 F.3d at 594 (affirming the district court's granting of summary judgment, stating that more than bare assertions and conclusory allegations or suspicions are required to show the existence of a genuine issue, and refusing to excuse failure to exhaust where plaintiff presented "accusations substantiated with nothing more than conclusory allegations of fraud and collusion" and "no evidence to establish that any one of the[] exceptions is applicable").  "[A]n employee's speculation that it would be futile to file a grievance is insufficient to excuse the employee's failure to exhaust.  Rather, the employee must put the grievance procedure to the test, for example, by filing repeated complaints to company and union officials."  Perry v. Midstates Indep. Union, 20 Fed. Appx. at 531 (affirming the district court's granting of summary judgment).

3.      **Statute of Limitations.**

A sixth-month statute of limitations applies to § 301 hybrid suits.  See Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d 1047, 1050-51 (10th Cir. 1995)(citing DelCostello v. International Bhd. of Teamsters, 462 U.S. at 154-55); Lucas v. Mountain States Tel. & Tel., 909 F.2d 419, 421 (10th Cir. 1990).  "The limitation period begins to run when an employee knows or in the exercise of reasonable diligence should have known or discovered the acts constituting the union's alleged violations."  Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d at 1053 (citations and internal quotations omitted).  "The determination of the accrual date is an objective one: the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue."  Garrish v. International Union, United Auto., Aerospace, and Agric. Implement Workers of Am., 417 F.3d at 594.

When the union rejects an employee's claim during the grievance process, the limitations period begins to run when the employee learns, or in the exercise of reasonable diligence, should have learned of the union's action.  See Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d at 1053; Garrish v. International Union, United Auto., Aerospace, and Agric. Implement Workers of Am., 417 F.3d at 594 ("[T]he statute of limitations period begins to run when a plaintiff knows that the union has withdrawn his grievance.").  On the other hand, when a union represents an employee throughout the grievance process, a claim does not accrue until the dispute resolution process has been completely exhausted.  See Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d at 1053-54.  Additionally, when the union's alleged breach of the duty of fair representation arises outside of the context of processing a grievance, the employee's good-faith attempt to exhaust the grievance process may toll the statute of limitations.

See id. at 1054.  "In order for the statute of limitations to be tolled, [however,] the internal union appeal must be able to afford [p]laintiffs some relief from [the employer]."  Garrish v. International Union, United Auto., Aerospace, and Agric. Implement Workers of Am., 417 F.3d at 595 (internal quotations and alterations omitted)(emphasis in original).

## ANALYSIS

The Court finds that the exhaustion requirement and/or the statute of limitations bars the Plaintiffs' claims.  While the Plaintiffs and their counsel make allegations of futility to justify their failure to exhaust the grievance procedure, they do not present facts supporting those assertions. The Court believes that there is no genuine issue of material fact that precludes the granting of judgment as a matter of law, based on exhaustion and the statute of limitations, to the Defendants.

## I.     THE EXHAUSTION REQUIREMENT BARS SEVERAL PLAINTIFFS FROM BRINGING SUIT.

The Defendants deny that the Plaintiffs, individually and collectively, filed grievances and submit that Bolton is the only Plaintiff to have ever filed a grievance concerning transportation.  See Union Answer at 4; Motion at 5.  The Plaintiffs counter by asserting that a material issue of fact exists regarding the steps various Plaintiffs took to request that the Union Defendants process a grievance.  See Response at 3-4.  The Court does not believe that the Plaintiffs, as the party seeking to avoid summary judgment, have set forth specific facts, with affidavits, depositions, answers to interrogatories, or admissions on file, demonstrating that there is a genuine issue of fact with respect to exhaustion requiring trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324 (providing standard that a non-moving party must meet to defeat a motion for summary judgment); Anderson v. Liberty Lobby, Inc., 477 U.S. at 248 (same).

The record before the Court does not demonstrate that, for several of the Plaintiffs, there is

a genuine issue of fact whether they attempted to exhaust the applicable grievance procedure.  To the contrary, the evidence presented to the Court demonstrates that several of the Plaintiffs did not attempt to exhaust the grievance process.  Allman, Lord, Rascon, Savala, Seifts, and Walton testified that they never asked the Union Defendants to file grievances concerning transportation.  <u>See</u> Allman Depo. at 34:24-35:2; Lord Depo. at 25:19-23; 28:21-25; Rascon Depo. at 15:17-16:2; Savala Depo. at 15:22-16:2; Seifts Depo. at 20:10-14; Walton Depo. at 33:24-34:2.  Lord, Rascon, Savala, and Seifts, also testified that they never filed grievances independent of the Union Defendants, and Allman testified that he was not aware of anybody asking the Union Defendants to file a grievance on his behalf.  <u>See</u> Allman Depo. at 34:24-35:2; Lord Depo. at 28:21-25; Rascon Depo. at 15:17-16:2; Savala Depo. at 15:22-16:2; Seifts Depo. at 20:10-14.  Walton testified that she believed someone had, on her behalf, asked the Union Defendants to represent her, but she does not indicate whether that was with regard to the grievance procedure.  <u>See</u> Walton Depo. at 34:16-18.  Liles testified that he did not recall whether he filed a grievance with regard to transportation and that he did not recognize the Union Defendants' grievance form.  <u>See</u> Liles Depo. at 34:1-3; 36:22-37:4.  Additionally, there is no evidence before the Court demonstrating a genuine issue of material fact whether Hinojos or Williams requested that the Union Defendants file grievances regarding transportation or filed such grievances themselves, independently.  The Court notes that Lord also testified that he asked Bennett, Funderburk, Liles, and Williams to "include [him] in on a [grievance]."  Lord Depo. at 38:2-7.

The Court does not believe that summary judgment can be granted against Bolton, Bennett, and Funderburk on the issue of exhaustion.  The parties do not dispute that Bolton filed a grievance concerning transportation in 2000.  <u>See</u> Motion at 4; Bolton Grievance; Response at 3.  Bennett testified that, in 2005, he requested two or three times that the Union file a grievance concerning

transportation, <u>see</u> Bennett Depo. at 9:11-10:16, and Funderburk testified that, in 2004, he requested that the Union file a grievance regarding transportation and that the Union refused his request, <u>see</u> Funderburk Depo. at 17:14-18:15.

Assuming that Lord's testimony concerning the involvement of Bennett, Liles, Williams, and himself in the filing of a grievance raises a question of material fact with respect to whether they attempted to exhaust the grievance procedure, nothing before the Court shows that a factual question exists regarding whether Allman, Hinojos, Rascon, Savala, Seifts, and Walton attempted to exhaust the grievance process. Because the record before the Court does not demonstrate that there is a genuine question whether Allman, Hinojos, Rascon, Savala, Seifts, and Walton attempted to exhaust the grievance procedure, and because those Plaintiffs have not presented facts supporting any of the exceptions to the exhaustion requirement, the Court finds that, for purposes of summary judgment, Allman, Hinojos, Rascon, Savala, Seifts, and Walton have not satisfied the exhaustion requirement. <u>See</u> <u>Dorn v. General Motors Corp.</u>, 131 Fed. Appx. at 469 (stating that a plaintiff cannot invoke an excuse to the exhaustion requirement in a conclusory fashion); <u>Podobnik v. United States Postal Serv.</u>, 409 F.3d 594 ("[A]n employee must at least attempt to exhaust [the grievance] process."); <u>Garvin v. American Tel. & Tel. Co.</u>, 174 F.3d at 1094 ("As a general rule . . . employees wishing to assert contract grievances must attempt use of the contract grievance procedure. . . . Unless the contract provides otherwise, . . . the employee must afford the union the opportunity to act on his behalf."). The Court therefore concludes that failure to exhaust bars the claims of Allman, Hinojos, Rascon, Savala, Seifts, and Walton.

The Court does not believe that any of the Plaintiffs who have not attempted to exhaust the grievance procedure may rely upon the recognized exhaustion exceptions. <u>See</u> <u>Podobnik v. United States Postal Serv.</u>, 409 F.3d at 594 (the three recognized exceptions to exhaustion are: "[i] where

the employer's conduct repudiates contractual remedies; [ii] where the use of grievance procedures would be futile; and [iii] where the union breaches its duty by wrongfully refusing to process a grievance").  First, there is no indication in the record that WTS/WGES repudiated contractual remedies.  Second, while the Plaintiffs seem to suggest -- by asserting that they had some knowledge of the Union's refusal to advance the grievance requests of Bolton, Bennett, and Funderburk, see, e.g., Allman Depo. at 37:15-21, and by suggesting that such knowledge supports a finding that the Plaintiffs had reason to believe further use of the grievance process would have been futile, see July 5, 2007 Transcript at 26:21-25; 27:13-20; 30:5-31:7 -- that use of the grievance procedure would have been futile, they do not present evidence in a form or of a substance that would warrant application of the futility exception.  "[A] plaintiff cannot invoke this excuse in a conclusory fashion, but must present facts supporting the claim of futility."  Dorn v. General Motors Corp., 131 Fed. Appx. at 469.

The Court does not believe that the Plaintiffs present evidence that is more substantial than conclusory allegations; the Court does not believe that the fact that some Plaintiffs may have known about the Union's treatment of previous grievance requests and that previous grievance requests concerning transportation were denied establishes futility.  "[A]n employee's speculation that it would be futile to file a grievance is insufficient to excuse the employee's failure to exhaust.  Rather, the employee must put the grievance procedure to the test, for example, by filing repeated complaints to company and union officials."  Perry v. Midstates Indep. Union, 20 Fed. Appx. at 531. Finally, the Court does not believe that the Plaintiffs submit evidence -- beyond conclusory allegations -- that the Union wrongfully refused to process a grievance.  The Plaintiffs have not presented evidence in the form of affidavits, depositions, answers to interrogatories, and admissions on file, that the Union acted in an arbitrary, invidiously discriminatory, bad faith, or irrational

manner in deciding whether to prosecute grievances concerning transportation.  See Nelson v. Holmes Freight Lines, Inc., 37 F.3d at 594.

The Court notes that, in reaching its conclusion on the exhaustion issue, it did not find the Plaintiffs' assertions that Union representatives stated, at different times, that they were working on the transportation issue to raise a genuine issue of material fact.  The Plaintiffs did not present admissible evidence demonstrating that the efforts of Union representatives were anything more than informal.  Similarly, the Court does not believe that the filing of a relatively informal WIPP-Form complaint can be equated with filing, or attempting to file a grievance, for exhaustion purposes. There is a difference between voicing informal complaints and suggestions, and filing a grievance pursuant to the collective-bargaining agreement.

## II.   THE STATUTE OF LIMITATIONS BARS THE REMAINDER OF THE PLAINTIFFS FROM BRINGING SUIT.

The Plaintiffs initiated this action on August 8, 2006.  See Liles, et al. v. Washington TRU Solutions, LLC, et al., D-506-CV-200600483 (5th Jud. Dist. N.M.), available at http://www.nmcourts.com/caselookup/partySearchResults.htm (last visited August 28, 2007).  Given the sixth-month statute of limitations applicable to this case, the action was timely filed only if the Plaintiffs' claims accrued after February 8, 2006.  See Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d at 1050-51 (stating that a six-month statute of limitations period applies to § 301 hybrid cases).  If the Plaintiffs' claims accrued before February 8, 2006, they are time barred unless they did not discover, or could not have discovered through due diligence, the Defendants' acts causing the alleged injuries before February 8, 2006.  See id.; Garrish v. International Union, United Auto., Aerospace, and Agric. Implement Workers of Am., 417 F.3d at 594 (applying the six-month statute of limitations).  The parties agree that Bolton filed a grievance

on February 11, 2000, see Motion at 4, Bolton Grievance, Response at 3, and the Plaintiffs present evidence raising an issue of fact whether Funderburk requested the Union to file a grievance in 2004, see Funderburk Depo. 17:14-18:15.

The statute of limitations ran on Bolton's claims regarding transportation long ago. Bolton's February 11, 2000 grievance was submitted to WGES on January 31, 2001, see Motion at 4, Letter from Roger Simmons to Dave Reber, Response at 3, the company responded to Bolton's grievance on February 8, 2001, see Motion at 4, Letter from S.P. Youngerman to R.D. Simmons, Response at 3, and Local 4-9477 withdrew Bolton's grievance on July 26, 2001, see Motion at 5, Letter from Beeman to Knowles. The statute of limitations thus began to run on any claim Bolton had associated with or concerning the February 11, 2000 grievance on July 26, 2001. See Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d at 1053 (stating that the limitations period begins to run when the employee learns, or in the exercise of reasonable diligence should have learned, that the union has rejected the employee's claim during the grievance process); Garrish v. International Union, United Auto., Aerospace, and Agric. Implement Workers of Am., 417 F.3d at 594 ("[T]he statute of limitations period begins to run when a plaintiff knows that the union has withdrawn his grievance."). The statute of limitations therefore bars Bolton's claim in this case, the Complaint for which was filed August 8, 2006. Moreover, the Court notes that Bolton testified that, beginning in 2001, he believed that the Union was not fairly representing him, see Bolton Depo. at 48:6-17, and that "somewhere in the 2003[-]2004 time frame" he was convinced that the Union was not going to do anything with regard to transportation, id. at 49:5-9. Based on the foregoing, the Court concludes that there is no genuine issue of material fact that the statute of limitations ran on Bolton's cause of action before August 8, 2006.

Similarly, the statute of limitations has run on Bennett's claims concerning transportation.

-23-

 Taking the evidence in the light most favorable to the Plaintiffs, as the Court must, it appears that, in 2005, Bennett asked the Union, two or three times, to file a grievance regarding transportation, that the Union refused his request in 2005, and that he told Funderburk, Liles, Lord, Seifts, Walton, and Williams about the Union's refusal in 2005.  See Bennett Depo. at 9:11-11:25.  Assuming, for the Plaintiffs' benefit, that Bennett was notified of the Union's refusal to file his grievance and provided that information to Funderburk, Liles, Lord, Seifts, Walton, and Williams on December 31, 2005, the statute of limitations began running on Bennett's claim on December 31, 2005.  See Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d at 1053 (stating that the limitations period begins to run when the employee learns, or in the exercise of reasonable diligence should have learned, that the union has rejected the employee's claim during the grievance process); Garrish v. International Union, United Auto., Aerospace, and Agric. Implement Workers of Am., 417 F.3d at 594 ("[T]he statute of limitations period begins to run when a plaintiff knows that the union has withdrawn his grievance.").  Bennett's claims concerning transportation therefore have been time barred since June 31, 2006.  See Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d at 1050-51 (stating that a six-month statute of limitations period applies to § 301 hybrid cases).  The Court concludes that there is no genuine issue of fact whether the statute of limitations bars Bennett's claims regarding transportation.

 The statute of limitations period also ran on Funderburk's claims regarding transportation long ago.  Taking the evidence in the light most favorable to the Plaintiffs, as the Court must, it appears that Funderburk requested that the Union file a grievance concerning transportation in 2004, that the Union refused his request in 2004, and that he told Bennett, Liles, Lord, and Williams about the Union's refusal in 2004.  See Funderburk Depo. At 17:14-18:15.  Assuming, for the benefit of the Plaintiffs, that Funderburk was notified of the Union's refusal to file his grievance and provided

that information to Bennett, Liles, Lord, and Williams on December 31, 2004, the statute of limitations began running on Funderburk's claim on December 31, 2004.  See Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d at 1053 (stating that the limitations period begins to run when the employee learns, or in the exercise of reasonable diligence should have learned, that the union has rejected the employee's claim during the grievance process); Garrish v. International Union, United Auto., Aerospace, and Agric. Implement Workers of Am., 417 F.3d at 594 ("[T]he statute of limitations period begins to run when a plaintiff knows that the union has withdrawn his grievance.").  Funderburk's claims regarding transportation have thus been time barred since June 31, 2005.  See Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d at 1050-51 (stating that a six-month statute of limitations period applies to § 301 hybrid cases).  The Court concludes that there is no genuine issue of fact whether the statute of limitations bars Funderburk's claims regarding transportation.

Lord testified that he asked Bennett, Funderburk, Liles, and Williams to "include [him] in on [a grievance]" concerning transportation.  Lord Depo. at 38:2-7.  Without more, such as evidence in the form of affidavits, depositions, answers to interrogatories, or admissions on file that Bennett, Funderburk, Liles, and/or Williams filed or attempted to file a grievance encompassing Lord's complaints, and the timing of any such filing or attempt, the Court does not believe that Lord's statement raises a genuine issue of material fact regarding exhaustion or the statute of limitations. The Court notes that Funderburk testified that he has not filed or asked the Union to file a grievance since his 2004 request.  See Funderburk Depo. at 12:9-15; 20:21-25.  The Court also notes that Funderburk testified that he told Bennett, Liles, Lord, and Williams about the Union's refusal to file a grievance concerning transportation in 2004, see id. at 17:14-18:15.  Moreover, the Court notes that Bennett testified that, pursuant to a conversation with Funderburk, he knew in 2004 that the

-25-

Union was not going to file a grievance regarding transportation, see id. at 11:22-25, that, in 2005, the Union told him it was not going to file a grievance regarding transportation, see id. at 11:3-6, and that, also in 2005, he relayed that information to Liles, Lord, Seifts, Walton, and Williams, see id. at 11:3-12.  Further, the Court notes that Williams testified that, sometime before October 1, 2005, he understood that the Union was not going to file a grievance concerning transportation.  See Williams Depo. at 28:13-29:1.

The Court finds that, if Funderburk's attempt to file a grievance in 2004 and Bennett's attempt to file grievances in 2005 are viewed as efforts to file collective grievances on behalf of themselves, Liles, Lord, and Williams, there is no question of fact that the statute of limitations would bar the transportation-related claims of Bennett, Funderburk, Liles, Lord, and Williams.  See Edwards v. International Union, United Plant Guard Workers of Am., 46 F.3d at 1050-51 (stating that a six-month statute of limitations period applies to § 301 hybrid cases).  The record indicates, without raising a material issue of genuine fact, that, after the Union reportedly refused Bennett's and Funderburk's requests to file grievances, Liles, Lord, and Williams were informed, no later than December 31, 2005, that the Union would not be filing a grievance regarding transportation.  The Court finds that, if Bennett's and Funderburk's reported requests that the Union file grievances are not viewed as collective attempts of themselves, Liles, Lord, and Williams, there is nothing in the record before the Court that raises an issue of fact whether Liles, Lord, and Williams did not exhaust the grievance procedure process.

The Court notes that, in reaching its conclusion on the statute of limitations issue, it did not find the Plaintiffs' assertions that Union representatives stated, at different times, that they were working on the transportation issue to raise a genuine issue of material fact.  The Plaintiffs did not present admissible evidence demonstrating that the efforts of Union representatives were anything

more than informal.  There is a difference between voicing informal complaints and suggestions, and filing a grievance pursuant to the collective-bargaining agreement.  The Court does not believe that the Union's statements that it was continuing to address the transportation issue, outside of the grievance process, tolled the statute of limitations.

The Court concludes that the Plaintiffs have not demonstrated, with evidence in the form of affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact concerning exhaustion and the statute of limitations, which requires trial and prevents the awarding of judgment as a matter of law.  The Court finds that the exhaustion requirement and/or the statute of limitations bars the claims of all of the Plaintiffs.  Accordingly, the Court will grant summary judgment to the Defendants and against the Plaintiffs.[2]

**IT IS ORDERED** that the Defendants Joint Motion for Summary Judgment is granted. Summary judgment on each of the Plaintiffs' claims is granted in favor of the Defendants and against the Plaintiffs.

_____
UNITED STATES DISTRICT JUDGE

---

[2] Because the Court concludes that the exhaustion requirement and/or the statute of limitations bars all of the Plaintiffs' claims, the Court need not address in this case the contract interpretation and whether the Plaintiffs raise genuine issues of material fact regarding the hybrid action they seek to bring.  The merits of a claim is best addressed after a plaintiff has exhausted the grievance process and, if that relief route is unsuccessful, timely filed a federal action.

*Counsel*:

James W. Klipstine, Jr.
Julie L. Zembas
Klipstine, Bowlin & Honigmann, LLC
Hobbs, New Mexico

   *Attorneys for the Plaintiffs*

Duane C. Gilkey
Carolyn Dominguez Shay
Justin E. Poore
Gilkey & Stephenson, PA
Albuquerque, New Mexico

   *Attorneys for Defendants Washington TRU*
      *Solutions, LLC and Westinghouse Government*
      *Environmental Services Co., LLC*

Shane C. Youtz
Lisa Y. Schatz-Vance
Youtz & Valdez, PC
Albuquerque, New Mexico

   *Attorneys for Defendants United Steel, Paper and*
      *Forestry, Rubber, Manufacturing, Energy, Allied*
      *Industrial and Service Workers International Union,*
      *AFL-CIO; its Local 12-9477; Paper, Allied Industrial*
      *Chemical & Energy Workers International Union*
      *AFL-CIO; and its Local 4-9477*